**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| BEAU D. BORUTTA, | No. ED CV 17-473-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 14, 2017, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on April 4, 2017, and April 20, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on December 20, 2017, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on August 21, 1978. [Administrative Record ("AR") at 22, 194.] He has past relevant military work experience in logistics and in the infantry. [AR at 22, 41, 45-46.]

On November 30, 2015, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since September 27, 2014. [AR at 9, 188-92, 194-202.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 9, 134-35.] A hearing was held on January 9, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 29-50.] A vocational expert ("VE") also testified. [AR at 41-48.] On January 30, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from September 27, 2014, the alleged onset date, through January 30, 2017, the date of the decision. [AR at 9-24.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 5.] When the Appeals Council denied plaintiff's request for review on February 15, 2017 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be

upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires

the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 27, 2014, the alleged onset date.[1] [AR at 11.] At step two, the ALJ concluded that plaintiff has the severe impairments of status post-pelvic fracture, nerve palsy of the right brachial plexus, traumatic brain injury, lumbar spondylosis, abdominal disorder, post-traumatic stress disorder, affective disorder, anxiety disorder, and personality disorder. [AR at 12.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in

---

[1]    The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020. [AR at 11.]

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
(continued...)

20 C.F.R. §§ 404.1567(b) and 416.967(b),[3] as follows:

> [Plaintiff] can lift 20 pounds occasionally and 10 pounds frequently; can stand and walk for two hours out of an eight-hour workday with regular breaks; can sit for six hours out of an eight-hour workday with regular breaks; can never push and pull with the right upper extremity; no restrictions pushing and pulling with the lower extremities; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally reach overhead in front or laterally; avoid extreme concentrated exposure to cold, dusts, fumes, odors, gases, and poor ventilation; avoid unprotected hazardous machinery and/or heights; limited to simple repetitive tasks; and limited to occasional public contact.[FN 1].
>
> [FN 1] Although the undersigned initially indicated that [plaintiff] was limited to frequent push and pull with the left upper extremity, the undersigned subsequently amended that limitation and found that the only pushing and pulling limitation was with the right upper extremity (See Audio Recording for hypothetical #1).

[AR at 14.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant military work in logistics or in the infantry. [AR at 22, 46.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "small products assembler" (<u>Dictionary of Occupational Titles</u> ("DOT") No. 929.587-010), "garment folder" (DOT No. 789.687-066), and "seam presser" (DOT No. 789.687-166). [AR at 23, 46-48.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of September 27, 2014, through January 30, 2017, the date of the decision. [AR at 24.]

/

/

---

[2](...continued)
the ALJ assesses the claimant's residual functional capacity." <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he determined plaintiff was able to perform the light occupations of small products assembler, garment folder, and seam presser, which require standing/walking in excess of plaintiff's RFC limitations. [JS at 3, 5.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

## A. STEP FIVE

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform his past relevant work, the VE generally will refer to the DOT. See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). The DOT is usually "the best source for how a job is generally performed." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT).[4] The procedural requirements of SSR 00-4p ensure that the record is clear as to why

---

[4] SSR 00-4p provides in relevant part:

> When a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any <u>possible conflict</u> between that VE . . . evidence and information provided in the DOT. . . .
>
> . . . .
> If the VE's . . . evidence <u>appears to conflict</u> with the DOT, the [ALJ] will obtain a reasonable explanation for the <u>apparent conflict</u>.
>
> . . . .
> When vocational evidence provided by a VE . . . is <u>not consistent with</u> information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. <u>The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified</u>.

SSR 00-4p (emphasis added). SSR 00-4p further provides that "[w]hen there is an <u>apparent unresolved conflict</u> between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable
(continued...)

an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. Massachi, 486 F.3d at 1153. In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, an ALJ must first determine whether a conflict exists, and if it does, he must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id.

Only after determining whether the testimony of the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).

**B.     THE PARTIES' CONTENTIONS**

Plaintiff's RFC limits him to standing and walking for no more than two hours during an eight-hour workday, and the ALJ's hypotheticals to the VE included this limitation. [AR at 13-14, 46.] The DOT describes the physical demands for the occupations of "small products assembler" (DOT No. 929.587-010), "garment folder" (DOT No. 789.687-066), and "seam presser" (DOT No. 789.687-166), which, as light work, generally require the ability to stand and walk for *six* hours

---

[4](...continued)
explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." Id. (emphasis added).

during an eight-hour workday.  Plaintiff notes that "[i]n an apparent attempt to resolve this glaring inconsistency," the ALJ stated the following:

> Pursuant to Social Security Ruling 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the [DOT] except for the apparent conflict regarding the standing and walking limitations. The undersigned finds that the opinion was supplemented by the vocational expert's work experience and education.  The undersigned finds that this is a reasonable basis for the opinion and accepts it.

[AR at 23 (citing 298-300 (resume of VE)).]  Plaintiff argues that where, as here, there is an apparent conflict between the VE's testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE's testimony to support a determination that the claimant is disabled.  [JS at 5 (citing Soc. Sec. Ruling ("SSR")[5] 00-4p).]  Plaintiff observes that during the hearing, the ALJ did not solicit an explanation; neither did the VE offer an explanation for the deviation.  [Id.]  Moreover, the VE did not testify that she in any way eroded the number of available jobs to account for the restricted standing and walking limitation.  [Id. (citing AR at 47-48).]  Plaintiff concludes that the requirements of SSR 00-4p have not been satisfied and the ALJ erred in finding that plaintiff can perform these three jobs in light of his walking/standing limitation. [JS at 6.]

Defendant responds that there is no conflict with the DOT and the ALJ properly determined plaintiff could perform other work at step five because "there was no inconsistency between the VE's testimony and the *DOT* which required an explanation."  [JS at 6.]  Defendant bases this assertion in part on the fact that the ALJ "asked the VE to ensure her testimony was consistent with the *DOT* and to otherwise let the ALJ know if she disagreed with the *DOT*, and the VE agreed" but did not identify any inconsistencies.   [JS at 7 (citing AR at 45-45), 10.]  Defendant also appears to argue that there is no conflict because the DOT does not state that light exertional work *requires* six hours of standing and walking; instead, it states that work is classified as light

---

[5] "SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

when it "involves walking or standing to a significant degree *or* sitting most of the time with pushing and/or pulling of arm or leg controls *or* working at a production rate pace entailing constant pushing and/or pulling of materials." [JS at 7-8 (emphasis in original).] Thus, because "the definition of light work is not solely dependent upon the standing and walking time required . . . [t]here was no necessary conflict with the *DOT*, and thus the ALJ had nothing to reconcile, especially since he alerted and asked the VE to identify any such conflicts." [JS at 10.] Defendant further asserts that the DOT "lists maximum requirements of occupations as generally performed but not the range of requirements of a particular job as it is performed in specific settings." [JS at 9 (citing SSR 00-4p).] Defendant concludes that a VE may be able to provide more specific information about jobs than the DOT, and because the ALJ included all of plaintiff's limitations in his hypothetical to the VE, and the VE -- based on her expertise -- identified three light occupations such an individual could perform, the ALJ properly relied on her testimony in finding plaintiff could perform other work at step five. [JS at 8-9, 10 (citations omitted).] Finally, defendant suggests that the ALJ had nothing to reconcile and was entitled to rely on the VE's testimony because plaintiff''s counsel did not challenge the VE's qualifications or otherwise question the VE at the hearing (instead declining to do so). [JS at 10.]

**C.    ANALYSIS**

Defendant's arguments are without merit. First, defendant's suggestion -- that because plaintiff failed to challenge the VE's qualifications or otherwise question the VE at the hearing the ALJ was entitled to rely on the VE's testimony -- is unpersuasive. Ninth Circuit law "is clear that a counsel's failure [to raise an issue] does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT -- for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle -- the ALJ is *required* to reconcile the inconsistency.'" Lamear v. Berryhill, 865 F.3d 1201, 1206 (9th Cir. 2017) (quoting Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015)); see also SSR 00-4p; Massachi, 486 F.3d at 1152-53; Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ has

9

a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel). Thus, "the fact that Plaintiff's representative did not challenge the VE's testimony as inconsistent with the DOT at the time of the hearing is not conclusive as to whether an apparent conflict exists, nor does it constitute a waiver of the argument." Gonzales v. Astrue, 2012 WL 2064947, at *4 (E.D. Cal. June 7, 2012) (citing Sims v. Apfel, 530 U.S. 103, 111-12, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000)).

Here, *before* the VE testified the ALJ asked her to "[p]lease make sure your testimony is consistent with the [DOT]. If you disagree with the DOT, please tell me," to which the VE replied, "Okay." [AR at 45-46.] However, *after* the VE testified, the ALJ did not make any further inquiry into whether the VE's testimony actually *had been consistent with* the DOT. [See AR at 48.] Neither did the ALJ or the VE identify the apparent conflict or deviation from the DOT as to plaintiff's standing/walking limitation and the ability to perform these light occupations, or provide any explanation to resolve the apparent conflict. An ALJ "cannot simply rely on the VE's testimony that no such conflicts exist." See Marquez v. Astrue, 2012 WL 3011779, at *2-3 (D. Ariz. July 23, 2012); see Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016) (to be fairly characterized as a conflict, the VE's testimony must be at odds with the DOT's listing of job requirements that are essential, integral, or expected).

Equally unpersuasive is defendant's argument that there is no apparent conflict between the DOT job requirements and the VE's testimony simply because the DOT provides three scenarios pursuant to which work may be considered light. Indeed, there is no dispute that the DOT defines light work as requiring (1) "a good deal of walking or standing," *or* (2) sitting most of the time with pushing and/or pulling arm or leg controls, *or* (3) working at a production rate pace entailing constant pushing and/or pulling of materials. However, a review of the job descriptions for the three identified occupations does not support a finding that any of the three is considered light work because they involve sitting most of the time with pushing and/or pulling of arm or leg controls, or working at a production rate pace entailing constant pushing and/or pulling of

materials.[6] These positions, therefore, appear to qualify as light work based on the very fact that they require a "good deal of walking or standing" -- in clear and direct conflict with plaintiff's RFC limitation to standing and walking only two hours of an eight-hour workday. Thus, the light work occupations suggested by the VE here are inconsistent with plaintiff's inability to stand and walk for more than two hours out of an eight-hour workday with regular breaks.

Further, Massachi "does not suggest that the ALJ need look no further than the VE's testimony in order to meet [her] obligation under SSR 00-4p to search for conflicts between the VE and the DOT." Marquez, 2012 WL 3011779, at *2-3. Instead, Massachi "construes SSR 00-4p as 'explicitly requiring that the ALJ determine whether the expert's testimony deviates from the [DOT] and whether there is a reasonable explanation for any deviation.'" Marquez, 2012 WL 3011779, at *2; see generally Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006) (remanding for ALJ to address "unresolved potential inconsistency" between VE testimony and DOT where it was unclear whether DOT's requirements for representative jobs accounted for claimant's limitation, and the ALJ failed to resolve such inconsistency with the VE; as a result the reviewing court was unable to determine whether the VE's testimony actually conflicted with the DOT) (cited by Massachi, 486 F.3d at 1153-54 & nn.7, 8, 13, 20). Absent a reasonable explanation for the apparent conflict here -- and defendant (who contends there is no apparent deviation) has pointed to no persuasive evidence in the record to explain the deviation in this case -- the ALJ cannot properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54; SSR 00-4p. As noted by the Ninth Circuit, "[t]he requirement for an ALJ to ask follow up questions is fact-dependent," and "the more obscure the job, the less likely common experience will dictate the result." Lamear, 865 F.3d at 1205 (noting that to avoid unnecessary appeals, "an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC").

---

[6] The Court notes that plaintiff's RFC also restricts him from pushing and pulling with the right upper extremity and limits him to simple repetitive tasks. [AR at 14.] These limitations, singly or in combination, may be inconsistent with light work requiring sitting most of the time and pushing and/or pulling arm controls, or working at a production rate pace with constant pushing and/or pulling of materials.

1       The Court finds that the ALJ's "pro forma" request to the VE -- prior to the VE's testimony -- to advise the ALJ if her testimony was in conflict with the DOT does not comply with the ALJ's obligation under Massachi and SSR 00-4p, to *inquire* about and *resolve* any deviations between the DOT and VE testimony. In short, just as counsel is not supposed to be a "potted plant" at the administrative hearing (see Solorzano v. Astrue, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012)), neither is the ALJ.

      In sum, the ALJ relied on VE testimony that conflicted with the DOT, and the ALJ was therefore required to explain the deviation by making either specific factual findings or drawing inferences from the context of the VE's testimony. See Light, 119 F.3d at 793. He did not do so. Instead, the record contains only the VE's conclusion that plaintiff, with his limitation to walking or standing for no more than two hours in an eight-hour workday, can perform work requiring "a good deal of walking or standing," and the ALJ's determination that the VE's testimony "is consistent with the information contained in the [DOT]" simply because her resume demonstrates her expertise. "Where an ALJ fails to obtain an explanation for and resolve an apparent conflict -- even where the VE did not identify the conflict -- the ALJ errs." Richardson v. Astrue, 2012 WL 1425130, at *5 (N.D. Cal. Sept. 14, 2015).

      Remand is required to obtain VE testimony to resolve the inconsistency between plaintiff's sit-stand limitations, and the DOT job requirements for the three light occupations suggested by the VE, which require a "good deal of walking or standing." Massachi, 486 F.3d at 1155.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

      The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the

evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall obtain VE testimony to attempt to resolve the inconsistency between plaintiff's standing and walking limitation,[7] and the DOT job descriptions for the three light representative occupations suggested by the VE. Then, if the inconsistency cannot be resolved, the ALJ shall determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[8]

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 5, 2018

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[7] Nothing herein is intended to disrupt the ALJ's overall RFC determination.

[8] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.